# STATE OF FLORIDA v CHU
## Case No. 87-060730TT A02
County Court, Palm Beach County

June 29, 1987

## APPEARANCES OF COUNSEL

**Kathy Donnelly,** Assistant State Attorney, for plaintiff.
**Ed O'Hara,** Public Defender's Office, for defendant.

## OPINION OF THE COURT

HOWARD C. BERMAN, County Judge.

### *AMENDED ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS*

This cause came before the Court on June 8, 1987 upon Defendant's Motion to Suppress evidence obtained as a result of the arrest of the Defendant for driving under the influence of alcoholic beverages. The Defendant is requesting that the Court suppress the blood test results pursuant to the arrest. The State of Florida was represented by Assistant State Attorney Kathy Donnelly and the Defendant was represented by Ed O'Hara. The Court having taken testimony, heard argument of counsel and being otherwise fully advised in the premises, the Court finds as follows:

### *FACTS*

On March 13, 1987, the Defendant was involved in a one-car traffic accident on I-95 in which her car overturned. Emergency medical personnel were the first people to arrive on the scene to give aid to the Defendant. The Defendant was however not injured. Shortly after the emergency medical personnel arrived on the scene, Florida Highway Patrol Trooper Kozma arrived. Trooper Kozma made contact with the emergency medical personnel and then he approached the Defendant who was sitting on the back of the emergency vehicle. The Defendant cooperated completely with Trooper Kozma. During the course of the investigation, and through conversation with the Defendant, the Defendant had a strong odor of alcoholic beverage on her breath and at times, the Defendant appeared to lack coherency. Based on this appearance as well as the odor of alcohol on her breath and the accident, Trooper Kozma requested her to submit to a blood test at the scene. The Defendant's implied consent was read to her and Trooper Kozma also obtained a written consent from the Defendant for the blood test. Trooper Kozma testified that the reason that he opted for a blood test instead of a breathalyzer test was for the fact that the paramedics were already there and he thought that it would be the most accurate and quickest way to test the Defendant. There was also no question that the Defendant was not going to be transported to the hospital as there were no injuries. After receiving the results of the blood test on March 21, 1987, the Defendant was issued a summons for driving under the influence of alcohol.

Florida Highway Patrol Trooper Sheehan also arrived at the scene of the accident shortly after Trooper Kozma. He also witnessed the

**61**

Defendant sign the implied consent and also the consent form to take her blood.

## FINDINGS

The issue raised by the Defendant that is before this Court is whether a blood test can be administered to determine the alcohol content of an individual's blood before a breath test or urine test is given. Defendant cites Florida Statutes 316.1932(1)(a), 1986 and 316.1932(1)(c), 1986 and *State v. Hilton*, 498 So.2d 698 (Fla. 5th DCA 19860.

Section 316.1932(1)(c) states in pertinent part:

(c) Any person whose consent is implied as provided in this section shall be deemed to have consented to an approved blood test for the purpose of determining the alcoholic content of the blood or a blood test for the purpose of determining the presence of chemical substances or controlled substances as provided herein if such person appears for treatment at a hospital, clinic, or other medical facility as a result of his involvement as a driver in a motor vehicle accident and the administration of a breath or urine test is impractical or impossible. The blood test shall be performed in a reasonable manner.

In *Hilton*, the Defendant was seriously injured in a single vehicle motorcycle accident. A Florida Highway Patrolman arrived at the scene of the accident and determined that the Defendant had been the driver of the motorcycle involved. The Defendant was transported to a hospital for treatment of his injuries. At the hospital, the trooper spoke to the Defendant and smelled alcohol on the Defendant's breath. The trooper then advised the Defendant of Florida's implied consent law and requested the attending nurse to obtain a blood sample from the Defendant. According to the trooper, the Defendant indicates that he understood the implied consent law and stated "go ahead and take blood if you want to go."

It is well established that the taking of blood for testing does not violate the Fourth Amendment protection against unreasonable search and seizure when there is probable cause to believe that the driver of a vehicle has been driving while under the influence of alcoholic beverages or controlled substances. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed. 2d 908 (1966); *State v. Mitchell*, 245 SO.2d 618 (Fla. 1971). Even though the issue in *Hilton* was whether or not Section 316.1932(1)(c) is unconstitutional because the section lacked an express requirement of probable or reasonable cause that a Defendant

62

was driving while under the influence of alcoholic beverage before a blood test could be administered, the Court discussed the requirements necessary under the section to administer a blood test.

Pursuant to Section 316.1932(1)(c), two requirements must be present before a blood test can be administered to determine the alcoholic content of an individual's blood. First, the individual to be tested must appear for treatment at a hospital, clinic, or other medical facility as a result of his involvement as a driver in a motor vehicle accident. Second, and crucial for the purposes of the case at bar, the administration of a breath test or urine test must be impractical or impossible. Implicit in the second requirement is that a breath or urine test would have been statutorily permissible under Section 316.1932(1)(a) but for the inability to administer these tests. *Hilton*, at p. 700.

In the case *sub judice*, the Defendant argues that because the Defendant did not appear for treatment at a hospital, clinic, or other medical facility as a result of her involvement as a driver in a motor vehicle accident, and because a breath test would not have been impractical or impossible, the subsequent administration of a blood test should be suppressed despite the Defendant's consent.* Trooper Kozma testified that the reason for asking the Defendant to submit to the administration of a blood test is because the paramedics were there on the scene and it was more practical and expedient to take a blood sample. There is no question that Trooper Kozma had reasonable or probable cause sufficient to have requested a breath or urine test. This Court finds that despite the fact that the Defendant did not appear at a hospital and a breath or urine test would not have been impractical or impossible, the taking of the Defendant's blood for purposes of a blood alcohol test was performed in a reasonable manner and did not violate the Defendant's constitutional and due process rights. Trooper Kozma had probable cause to believe that the Defendant was driving or was in actual physical control of the automobile while under the influence of alcoholic beverages thereby requesting the blood test.

Pursuant to Florida Rules of Appellate Procedure 9.030(b)(5)(A) and 9.160(d), the Court certifies the following issue raised in the Defendant's motion to suppress of being of great public importance:

---

* This Court finds this argument ironic as Defense Attorneys usually attack the accuracy and reliability of breathalyzer tests. Defense Attorneys almost always elicit testimony from police officers that blood tests are much more accurate than breath tests and therefore a blood test should have been given to verify or corroborate a breath test. Here, Defense Counsel is arguing that despite the accuracy of a blood test, a breathalyzer test should have been offered first to the Defendant pursuant to 316.1932(1)(c).

Does Section 316.1932(1)(c), Florida Statutes (1986) prohibit a law enforcement officer to request the administration of a blood test if a defendant does not appear at a hospital, clinic or other medical facility as a result of his involvement as a driver in a motor vehicle accident and if a breath test is not impractical or impossible?

One of the most common types of cases presented in County Court involves driving under the influence of alcoholic beverages. Usually the major issue involves evidence concerning blood alcohol content of a subject. Blood alcohol content can be measured 3 days with the most common being by a breathalyzer, and the second most common, a blood test. Therefore, definitive construction as to one aspect of evidence concerning the implied consent as it relates to breath, blood, and urine tests for alcohol would provide uniformity and guidance in an area where appellate decisions are sparse.

Based on the foregoing, it is

ORDERED AND ADJUDGED that the Defendant's Motion to Suppress is denied.

DONE AND ORDERED in chambers in West Palm Beach, Palm Beach County, Florida this 29th day of June, 1987.